**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NORTH CAROLINA**

**CHARLOTTE DIVISION**

JUANITA SHABAZZ,

Plaintiff,

v.

**NOVANT HEALTH, INC.,**

Defendant.

Civil Action No. 3:26-cv-00489-MEO-DCK

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

FILED
CHARLOTTE, NC

JUL 24 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

## NATURE OF THE ACTION

1. Plaintiff Juanita Shabazz brings this action against Defendant Novant Health, Inc. for unlawful retaliation arising from her repeated good-faith reports of patient safety concerns, workplace safety hazards, professional nursing concerns, and other matters that Plaintiff reasonably believed required reporting under her obligations as a licensed Registered Nurse.

2. Throughout her employment, Plaintiff repeatedly reported concerns through Defendant's internal reporting processes, nursing leadership, Human Resources, and governmental agencies after she believed certain concerns had not been adequately addressed internally.

3. Plaintiff alleges that these reports involved matters affecting patient safety, employee safety, medication safety, workplace violence, infection control, staffing, professional nursing practice, and regulatory compliance within Defendant's Child and Adolescent Behavioral Health Unit.

4. Plaintiff contends that after Defendant became aware of her repeated reporting activities, Defendant's treatment of Plaintiff changed significantly.

5.  Plaintiff alleges that Defendant thereafter subjected her to increased scrutiny, disciplinary action, administrative leave, Final Coaching, and ultimately termination.
6.  Plaintiff denies that Defendant's stated reasons for discipline and termination accurately reflected the events as Plaintiff understood them and alleges those reasons were pretextual.
7.  Plaintiff seeks all relief authorized by applicable federal and North Carolina law.

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to applicable federal jurisdictional statutes.
9.  This Court has supplemental jurisdiction over related North Carolina claims pursuant to 28 U.S.C. § 1367.
10. Venue is proper in the Western District of North Carolina because the events giving rise to this action occurred in Mecklenburg County, North Carolina.
11. Defendant regularly conducts business within this judicial district.

## PARTIES

12. Plaintiff Juanita Shabazz is an adult resident of Mecklenburg County, North Carolina.
13. Plaintiff is a licensed Registered Nurse.
14. Plaintiff was employed by Defendant as a Registered Nurse within Defendant's Child and Adolescent Behavioral Health Unit located in Charlotte, North Carolina.
15. Defendant Novant Health, Inc. is a corporation doing business in North Carolina and was Plaintiff's employer at all relevant times.
16. At all relevant times Defendant acted through its officers, directors, supervisors, managers, Human Resources personnel, and employees acting within the course and scope of their employment.

## FACTUAL ALLEGATIONS

### Employment Background

17. Plaintiff began working for Defendant in approximately September 2023 as a Registered Nurse assigned to the Child and Adolescent Behavioral Health Unit.
18. Plaintiff provided psychiatric nursing care to pediatric and adolescent patients experiencing acute psychiatric and behavioral health crises.

19. Plaintiff's duties included patient assessments, medication administration, crisis intervention, emergency response, interdisciplinary collaboration, implementation of physician orders, and documentation.
20. Plaintiff frequently served as Charge Nurse.
21. Plaintiff also assisted with orienting and mentoring newly hired nursing staff.
22. Plaintiff exercised independent nursing judgment in caring for pediatric psychiatric patients.
23. Plaintiff's position required compliance with the North Carolina Nursing Practice Act, Defendant's policies, accepted nursing standards, and ethical obligations governing registered nurses.
24. Plaintiff believed those professional obligations required her to report patient abuse, unsafe patient care, workplace violence, unsafe staffing, medication safety concerns, infection-control concerns, failures of safety equipment, and other conditions that could jeopardize patients, visitors, or healthcare personnel.
25. Plaintiff made such reports throughout her employment in good faith.

## Positive Employment History

26. Prior to the events giving rise to this lawsuit, Plaintiff maintained positive professional relationships with nursing leadership.
27. Plaintiff was entrusted with additional responsibilities, including serving as Charge Nurse and assisting with orientation of newly hired employees.
28. Plaintiff regularly accepted additional assignments and assisted coworkers when needed.
29. Plaintiff participated in leadership discussions involving patient care, staffing, workflow, and operational issues affecting the Child and Adolescent Behavioral Health Unit.
30. Plaintiff alleges she was regarded as a dependable, knowledgeable, and valued Registered Nurse before engaging in the protected reporting activities described below.

## IV. FACTUAL ALLEGATIONS

## A. Plaintiff's Protected Reporting Activities

## February 2025 – Infection Control and Patient Safety

31. On or about February 17, 2025, Plaintiff submitted a written communication to Nurse Manager Barbara Thomson regarding infection-control and patient-safety

concerns involving the discharge of a pediatric behavioral health patient who had tested positive for COVID-19.

32. Plaintiff expressed concern that the discharge process could unnecessarily expose other pediatric patients, visitors, and hospital employees to communicable illness.

33. Plaintiff submitted the communication through Defendant's established management structure because she believed the issue presented a significant patient-safety concern.

34. Nurse Manager Barbara Thomson acknowledged receipt of Plaintiff's communication and advised Plaintiff that the concerns would be reviewed.

35. Plaintiff continued performing her assigned duties following this report.

36. Plaintiff alleges this communication demonstrates Defendant's early knowledge that Plaintiff routinely raised patient-safety concerns through internal reporting channels.

## Spring–Summer 2025 – Professional Responsibilities and Continued Reporting

37. Throughout 2025, Plaintiff continued working as a Registered Nurse and Charge Nurse on Defendant's Child and Adolescent Behavioral Health Unit.

38. Plaintiff regularly cared for pediatric and adolescent psychiatric patients with complex behavioral health conditions requiring close observation, crisis intervention, medication management, and interdisciplinary treatment.

39. Plaintiff believed her professional responsibilities required her to report unsafe conditions, suspected patient abuse, medication safety concerns, unsafe staffing, workplace violence, failures of safety equipment, infection-control issues, and other conditions that could jeopardize patients or staff.

40. Plaintiff utilized Defendant's internal reporting procedures in an effort to resolve concerns through management before contacting outside agencies.

41. Plaintiff communicated concerns through emails, verbal reports, meetings with supervisors, Human Resources, and Defendant's internal reporting mechanisms.

42. Plaintiff alleges management acknowledged receiving numerous reports throughout 2025.

## Reports Concerning Professional Conduct

43. During 2025, Plaintiff observed conduct by another Registered Nurse that Plaintiff believed warranted management review.

44. Plaintiff reported her concerns to Nurse Manager Barbara Thomson and other members of nursing leadership.

45. Plaintiff believed the reported conduct affected patient care, professional nursing practice, employee safety, and Defendant's operational standards.

46. Plaintiff documented these concerns through written communications to ensure an accurate contemporaneous record.
47. Plaintiff requested that Defendant investigate the reported conduct and determine whether corrective action was warranted.
48. Plaintiff continued working collaboratively with management after submitting these reports.

## Reports Concerning Patient Safety

49. During 2025, Plaintiff repeatedly communicated concerns involving patient safety, staffing, workplace violence, restraint practices, therapeutic programming, infection control, and medication safety.
50. Plaintiff believed these reports were consistent with her ethical obligations as a Registered Nurse and Defendant's stated commitment to patient safety.
51. Plaintiff maintained contemporaneous documentation of many of these communications through emails and written correspondence.
52. Plaintiff alleges Defendant retained many of these communications within its business records.
53. Plaintiff continued performing all assigned nursing duties while raising these concerns.

## Reports Regarding Patient Abuse and Workplace Violence

54. During 2025, Plaintiff reported concerns involving patient injuries, staff conduct, and incidents of workplace violence occurring within the Child and Adolescent Behavioral Health Unit.
55. Plaintiff believed these incidents required prompt management review because they involved the safety of vulnerable pediatric psychiatric patients and hospital employees.
56. Plaintiff reported these matters through Defendant's internal reporting structure and cooperated with requests for additional information.
57. Plaintiff also documented many of these incidents in contemporaneous written communications.
58. Plaintiff alleges Defendant was aware that Plaintiff continued raising patient-safety concerns despite increasing workplace tension.

## Human Resources Complaint

59. On or about July 21, 2025, Plaintiff submitted a formal complaint to Defendant's Human Resources Department concerning patient safety, workplace concerns, and professional conduct.

60. Plaintiff advised Human Resources that she was concerned she could experience retaliation because of her repeated reports.
61. Defendant acknowledged receipt of Plaintiff's complaint and opened a Human Resources review.
62. Plaintiff cooperated with Defendant's investigation by providing additional information when requested.
63. Plaintiff alleges this complaint further established Defendant's knowledge of her protected reporting activities.

**Escalation to Governmental Agencies**

64. After repeatedly reporting concerns through Defendant's internal reporting structure, Plaintiff concluded that certain matters had not been adequately addressed.
65. Plaintiff thereafter submitted complaints to governmental agencies responsible for workplace safety, healthcare regulation, nursing practice, and patient safety.
66. Plaintiff provided information she believed to be truthful based upon her personal observations, professional judgment, and contemporaneous documentation.
67. Plaintiff cooperated with requests for additional information from those agencies.
68. Plaintiff continued performing her nursing duties while cooperating with governmental investigations.
69. Plaintiff alleges Defendant became aware that she had reported concerns outside the organization.
70. As 2025 progressed, Plaintiff continued documenting patient safety concerns, employee safety issues, therapeutic programming deficiencies, and professional conduct concerns while simultaneously cooperating with internal and external investigations.
71. Plaintiff alleges that Defendant's treatment of her began to change after management became aware of the scope of her reporting activities.
72. The events described in the following section occurred after months of documented internal and external reporting and immediately preceded the disciplinary actions challenged in this lawsuit.

## IV. FACTUAL ALLEGATIONS

### B. Escalation of Patient Safety and Regulatory Concerns (July 2025 – January 2026)

**Reports Concerning Patient Abuse, Workplace Violence, and Patient Safety**

73. During the summer of 2025, Plaintiff continued reporting incidents that she reasonably believed affected the safety of pediatric psychiatric patients, hospital employees, and visitors.
74. Plaintiff documented concerns involving patient injuries, workplace violence, staffing practices, professional conduct, and compliance with Defendant's policies and standards of care.
75. Plaintiff communicated these concerns through written emails, verbal reports, meetings with nursing leadership, Human Resources, and Defendant's internal reporting systems.
76. Plaintiff believed these reports were required by her professional responsibilities as a Registered Nurse and were made in good faith to protect vulnerable pediatric patients.

## Reports Regarding Professional Conduct

77. During this same period, Plaintiff reported concerns regarding the conduct of another Registered Nurse assigned to the Child and Adolescent Behavioral Health Unit.
78. Plaintiff communicated those concerns to Nurse Manager Barbara Thomson, Director Cindy Estes, and other members of leadership.
79. Plaintiff requested that Defendant investigate the reported conduct and determine whether corrective action was appropriate.
80. Plaintiff alleges Defendant was aware of these reports and retained documentation reflecting her communications.

## July 2025 – Pod Placement and Therapeutic Programming Concerns

81. In approximately July 2025, Plaintiff became concerned regarding the prolonged placement of several pediatric patients in the unit's pod area.
82. Plaintiff observed that patients assigned to the pod received limited access to therapeutic programming, educational services, structured activities, and other treatment interventions that Plaintiff believed were expected in an inpatient behavioral health setting.
83. Plaintiff further observed that patients' requests for basic necessities were, on occasion, redirected rather than promptly addressed, and she intervened to ensure that patients received appropriate assistance.
84. Plaintiff communicated these concerns directly to nursing leadership, including Nurse Manager Barbara Thomson and Director Cindy Estes.
85. Plaintiff requested that management either return the affected patients to the primary treatment unit or otherwise ensure that they received appropriate therapeutic programming and patient care.

86. Plaintiff alleges she also expressed concern that the pod should not be used in a manner that functioned as punishment rather than therapeutic treatment.

## Patient Placement and Trauma-Informed Care

87. Plaintiff further expressed concerns regarding room assignments involving vulnerable pediatric psychiatric patients.
88. Plaintiff advocated for trauma-informed placement decisions that considered patients' behavioral histories, developmental needs, and potential safety risks to roommates.
89. Plaintiff recommended that bedside nurses be consulted before room assignments because of their familiarity with individual patients' behavioral patterns and treatment needs.
90. Plaintiff believed these recommendations promoted patient safety and reduced the risk of additional psychological trauma to hospitalized children.

## Medication Safety Concerns

91. During the course of her employment, Plaintiff identified what she believed to be a medication safety concern after reviewing a patient's medical record.
92. Plaintiff observed that a medication previously discussed as discontinued appeared to remain available within the patient's medication regimen.
93. Plaintiff communicated her concern to the treating provider and nursing leadership for clarification.
94. Plaintiff did so to prevent a potential medication error and promote safe patient care.
95. Plaintiff alleges this communication reflected her continuing efforts to advocate for patient safety.

## Reports to the North Carolina Department of Health and Human Services

96. After repeatedly reporting concerns through Defendant's internal reporting structure, Plaintiff submitted written complaints to the North Carolina Department of Health and Human Services, Division of Health Service Regulation ("DHHS"), requesting regulatory review of patient safety and treatment practices within Defendant's Child and Adolescent Behavioral Health Unit.
97. Plaintiff's complaints documented concerns that she had previously reported to Defendant's leadership regarding patient safety, professional conduct, prolonged patient placement, staffing concerns, and therapeutic programming.
98. Plaintiff also requested that DHHS review whether Defendant's practices complied with applicable regulatory requirements governing behavioral health facilities.

99. Plaintiff cooperated with requests for additional information from DHHS and provided documentation supporting the concerns she had previously raised internally.

## Reports Regarding Unauthorized Access to the Pediatric Unit

100. In January 2026, Plaintiff reported concerns after learning that an individual who was not a hospital employee had entered the secured Child and Adolescent Behavioral Health Unit to provide haircuts to pediatric patients.
101. Plaintiff believed the incident presented patient safety, security, and regulatory compliance concerns because the individual was not known to her as an authorized hospital employee and allegedly entered the unit with items that could present safety risks in a behavioral health setting.
102. Plaintiff further reported that a patient informed her the individual had permitted the patient to use the individual's personal cellular telephone while on the unit.
103. Plaintiff reported these concerns to nursing leadership, Defendant's Human Resources Department, and later to DHHS because she believed the incident warranted regulatory review.
104. Defendant's Human Resources Department acknowledged receipt of Plaintiff's complaint and advised that the matter would be reviewed.

## OSHA Complaint

105. Plaintiff also reported workplace safety concerns to the North Carolina Department of Labor, Occupational Safety and Health Division ("OSH Division"), after concluding that repeated workplace hazards had not been adequately addressed through Defendant's internal reporting processes.
106. Plaintiff's report concerned workplace violence, employee safety, staffing concerns, and conditions that she believed increased the risk of injury to healthcare personnel.
107. On or about August 22, 2025, the Occupational Safety and Health Division acknowledged receipt of Plaintiff's complaint and requested additional information concerning the reported workplace hazards.
108. Plaintiff cooperated with the Occupational Safety and Health Division by providing additional information requested during its review.
109. Plaintiff alleges these reports were made in good faith and were consistent with her professional responsibilities as a Registered Nurse.

## Management's Knowledge

110. Plaintiff alleges that, by this point, Defendant's nursing leadership, Human Resources personnel, and supervisory employees were aware that Plaintiff had repeatedly reported patient safety concerns both internally and to governmental agencies.

111. Plaintiff further alleges Defendant possessed emails, Human Resources records, meeting notes, and other business records documenting her reporting activities.

112. Plaintiff contends that after management became aware of the scope of her reporting activities, Defendant's treatment of Plaintiff changed significantly.

## IV. FACTUAL ALLEGATIONS (Continued)

### C. Workplace Assault, Administrative Leave, Final Coaching, and Termination

### Workplace Assault and Continuing Safety Advocacy

113. During her employment, Plaintiff was physically assaulted by a patient while performing her nursing duties on Defendant's Child and Adolescent Behavioral Health Unit.

114. Plaintiff reported the incident through Defendant's established reporting procedures.

115. Following the incident, Plaintiff participated in debriefing discussions concerning employee safety, staffing, patient management, and measures intended to reduce the risk of future workplace violence.

116. Plaintiff continued advocating for improvements in employee safety and patient care after the assault.

117. Plaintiff alleges that she remained committed to providing safe and effective care despite the physical and emotional impact of the incident.

### Increased Scrutiny Following Plaintiff's Reports

118. Plaintiff alleges that, after months of reporting patient safety, workplace safety, and regulatory concerns, Defendant's treatment of Plaintiff changed.

119. Plaintiff contends that management subjected her work to increased scrutiny that differed from the level of oversight she experienced before engaging in the reporting activities described in this Complaint.

120. Plaintiff alleges that management questioned her clinical judgment, communications, and work performance more frequently than before her reporting activities.

121.  Plaintiff contends that this increased scrutiny occurred after Defendant became aware of her repeated internal complaints and reports to governmental agencies.

122.  Plaintiff believes these actions marked a significant departure from Defendant's prior treatment of her as a Charge Nurse and experienced psychiatric Registered Nurse.

## Administrative Leave

123.  On or about January 25, 2026, Defendant placed Plaintiff on administrative leave pending an internal investigation.

124.  Plaintiff cooperated with Defendant throughout the investigation and remained available to provide information requested by management.

125.  While on administrative leave, Plaintiff also continued responding to requests from governmental agencies concerning matters she had previously reported.

126.  Plaintiff believed she had a continuing professional obligation to provide truthful information to regulatory authorities regarding matters within her personal knowledge.

127.  Plaintiff preserved emails, written communications, text messages, and other contemporaneous records relating to the events described in this Complaint.

128.  Plaintiff alleges that the decision to place her on administrative leave occurred after months of documented internal and external reporting activities.

## Final Coaching

129.  On or about January 30, 2026, Defendant issued Plaintiff a Final Coaching.

130.  Defendant advised Plaintiff that the disciplinary action related to alleged violations of Defendant's policies involving Plaintiff's handling of work-related information.

131.  Plaintiff disputed the allegations underlying the Final Coaching and submitted a written response explaining why she believed the disciplinary action was inaccurate.

132.  Plaintiff further advised Defendant that she believed the disciplinary action followed months of patient safety reporting, workplace safety reporting, and cooperation with governmental agencies.

133.  Plaintiff requested that Defendant fairly review the circumstances surrounding the disciplinary action.

## Continued Cooperation with Governmental Agencies

134. Following the issuance of the Final Coaching, Plaintiff continued cooperating with governmental agencies that had requested information concerning workplace safety, patient safety, and healthcare regulatory matters.

135. Plaintiff provided documentation that she believed accurately reflected the chronology of events she had reported internally and externally.

136. Plaintiff alleges these communications were made in good faith and were consistent with her ethical obligations as a Registered Nurse.

## Return to Work

137. Following her administrative leave, Plaintiff returned to work for Defendant.

138. Plaintiff alleges that, after returning, management continued closely scrutinizing her work performance and communications.

139. Plaintiff contends that the work environment differed substantially from the environment she experienced before engaging in the reporting activities described in this Complaint.

140. Plaintiff nevertheless continued performing her assigned nursing duties and continued advocating for patient safety and regulatory compliance.

## Termination of Employment

141. On or about April 7, 2026, Defendant terminated Plaintiff's employment.

142. Defendant informed Plaintiff that the termination was based upon alleged performance deficiencies and policy violations.

143. Plaintiff disputed Defendant's stated reasons for termination and maintained that the reasons provided did not accurately reflect the events as she understood them.

144. Plaintiff timely exercised Defendant's internal appeal process and submitted a written appeal challenging the termination decision.

145. In her appeal, Plaintiff explained why she believed the disciplinary actions and termination were inconsistent with her employment history and the chronology of her repeated patient safety and workplace safety reports.

146. Plaintiff alleges that, at the time of her termination, Defendant was aware that she had reported concerns to Human Resources, nursing leadership, DHHS, OSHA, and other regulatory authorities.

147. Plaintiff contends that her termination occurred after a prolonged course of protected reporting activity and escalating disciplinary actions.

148. Plaintiff alleges that Defendant's stated reasons for terminating her employment were a pretext for retaliation. Defendant denies this allegation.

## V. DAMAGES

149. As a direct and proximate result of the actions alleged in this Complaint, Plaintiff suffered loss of employment, lost wages, lost employment benefits, and diminished earning capacity.
150. Plaintiff further alleges that she experienced emotional distress, anxiety, embarrassment, and damage to her professional reputation.
151. Plaintiff alleges that the workplace assault she experienced during her employment contributed to physical injuries requiring medical evaluation and treatment.
152. Plaintiff has incurred and expects to incur additional financial losses associated with the termination of her employment.
153. Plaintiff seeks all damages, equitable relief, costs, and other remedies available under the applicable law.

## VI. COUNT I

**Retaliation**

154. Plaintiff realleges and incorporates by reference Paragraphs 1 through 153 as though fully set forth herein.
155. Throughout her employment, Plaintiff repeatedly reported concerns that she reasonably believed involved patient safety, workplace safety, professional nursing practice, regulatory compliance, medication safety, staffing, workplace violence, infection control, and the quality of care provided within Defendant's Child and Adolescent Behavioral Health Unit.
156. Plaintiff made these reports internally to supervisors, nursing leadership, and Human Resources and, after concluding that certain concerns had not been adequately addressed, to governmental and regulatory agencies, including the North Carolina Department of Health and Human Services and the North Carolina Department of Labor, Occupational Safety and Health Division.
157. Plaintiff alleges that these reports were made in good faith and were consistent with her ethical and professional responsibilities as a licensed Registered Nurse.
158. Plaintiff alleges that Defendant knew of her repeated reporting activities through emails, meetings, Human Resources complaints, written correspondence, and communications with management.
159. Following Plaintiff's reporting activities, Defendant subjected Plaintiff to increased scrutiny, disciplinary action, administrative leave, Final Coaching, and ultimately terminated her employment.
160. Plaintiff contends that these adverse employment actions were causally connected to her protected reporting activities.

161. Plaintiff alleges that Defendant's stated reasons for disciplining and terminating her employment were not the true reasons for those actions and were instead a pretext for unlawful retaliation. Defendant denies these allegations.

162. As a direct and proximate result of Defendant's alleged retaliatory conduct, Plaintiff suffered lost wages, lost employment benefits, diminished earning capacity, emotional distress, damage to her professional reputation, litigation expenses, and other damages recoverable under applicable law.

163. Plaintiff seeks all legal and equitable relief available under the causes of action asserted in this Complaint.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

A. Declare that Defendant's actions violated the law applicable to Plaintiff's claims;

B. Award Plaintiff all compensatory damages recoverable under applicable law;

C. Award Plaintiff back pay, front pay in lieu of reinstatement if appropriate, lost employment benefits, and other economic losses;

D. Award Plaintiff damages for emotional distress and damage to her professional reputation to the extent authorized by law;

E. Award pre-judgment and post-judgment interest as permitted by law;

F. Award Plaintiff taxable costs and any attorney's fees authorized by statute, if applicable;

G. Grant all appropriate declaratory, equitable, and injunctive relief authorized by law; and

H. Award such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

This 7/22/2026.

Juanita Shabazz
Plaintiff, *Pro Se*

1536 April Knoll Court
Huntersville, NC 28078

Telephone: (704) 783-6919
Email: shabazzjuanita@ymail.com